UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. C21-5317-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erred by (**1**) rejecting the opinion of his treating physician that plaintiff was limited to sedentary work; (**2**) rejecting the opinions of consultative examiners that plaintiff was limited to standing/walking no more than four to six hours in a workday; (**3**) rejecting the medical opinions that plaintiff was limited to occasional reaching; (**4**) rejecting the medical opinions that plaintiff was limited to superficial contact with others; and (**5**) rejecting the opinion of his treating physician that plaintiff would miss four or more days per month.  Dkt. 13, at 3–4.  As discussed below, the Court finds that the ALJ harmfully erred with respect to **issues 3 and 4** and therefore **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 1

**BACKGROUND**

Plaintiff is currently 57 years old, has a high-school education, and has worked in a number of jobs. Tr. 43–55. In 2017, he applied for benefits, alleging disability as of September 7, 2015. Tr. 169. After plaintiff's applications were denied initially and on reconsideration, the ALJ conducted a June 2019 hearing. Tr. 39–91. In a June 2019 decision, the ALJ found that plaintiff has the severe impairments of bilateral rotator cuff syndrome and shoulder degenerative joint disease, lumbago, and left knee impairment. Tr. 172. The ALJ assessed a residual functional capacity ("RFC") of light work with additional physical and postural limitations, including being able to sit, stand, and walk for 6 hours in an 8-hour workday, and being limited to reaching overhead occasionally and reaching in all other planes frequently. Tr. 174. The ALJ found that plaintiff was unable to perform any past, relevant work. Tr. 179. Nonetheless, at step five of the sequential analysis, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy, including counter clerk (DOT 249.366-010) and inspector and hand packager (DOT 559.687-074). Tr. 180–81. The ALJ therefore found plaintiff to be not disabled. Tr. 181.

The Appeals Council granted plaintiff's request for review. Dkt. 17. The Appeals Council adopted the ALJ's findings at all steps of the sequential evaluation beginning September 7, 2015, through June 20, 2019. Tr. 17. The Appeals Council found, however, that the ALJ should have reviewed plaintiff's case as a borderline age situation because plaintiff changed age categories to a person of advanced age soon after the decision date. Tr. 19. In view of plaintiff's non-mechanical attainment of age 55, an application of the grid rules meant that plaintiff was disabled beginning on June 21, 2019. Tr. 20.

1    Plaintiff appeals the ALJ's final opinion finding him not disabled and denying benefits

2  from September 2015 through June 2019.

3                                              **DISCUSSION**

4    The Court will reverse the ALJ's decision only if it was not supported by substantial

5  evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v.*

6  *Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account

7  of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one

8  rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v.*

9  *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

10    Plaintiff contends that the ALJ harmfully misevaluated the medical evidence: (**1**) the

11  opinion of treating physician Dr. Lisa Neff, D.O., that plaintiff was limited to sedentary work;

12  (**2**) the opinions of consultative examiners Dr. Derek Leinenbach, M.D., and Dr. James

13  McKown, M.D., regarding the severity of plaintiff's standing/walking restrictions; (**3**) the

14  opinions of Drs. Neff, McKown, and Neff that plaintiff was limited to occasional reaching; (**4**)

15  the opinions of non-examining, reviewing psychologist Dr. Christmas Covell, Ph.D., and

16  psychiatrist Dr. Steven Covey, M.D., that plaintiff was limited to superficial contact with others;

17  and (**5**) Dr. Neff's opinion that plaintiff would miss four or more days of work per month. The

18  ALJ considers the persuasiveness of medical opinions using five factors (supportability,

19  consistency, relationship with claimant, specialization, and other), but supportability and

20  consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2),

21  (c) (2017). The ALJ must explain in his decision how persuasive he finds a medical opinion(s)

22  and/or a prior administrative medical finding(s) based on these two factors. 20 C.F.R. §§

23  404.1520c(b), 416.920c(b) (2017). The ALJ may, but is not required to, explain how he

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 3

1    considered the other remaining factors, unless the ALJ finds that two or more medical opinions

2    or prior administrative medical findings about the same issue are both equally well-supported

3    and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)

4    (2017). And the new regulations eliminate the agency's "treating source rule," which gave

5    special deference to treating doctors' opinions. 82 Fed. Reg. at 5853.

6         The Court finds that the ALJ erred by failing to cite substantial evidence to support

7    rejecting the medical evidence that plaintiff was limited to occasional reaching (**issue 3**) and

8    superficial contact with others (**issue 4**). These errors were harmful because they affected the

9    ALJ's step two evaluation of severe impairments, the consequent RFC assessment, and the step

10   five determination that there were jobs in the national economy plaintiff could perform. The

11   Court therefore reverses and remands for further administrative proceedings.

12        **1.   Reversible Errors: Issue 3 (Occasional Reaching) and Issue 4 (Superficial Contact)**

13

14        The ALJ concluded that although non-examining Dr. J.D. Fitterer, M.D., opined that

15   plaintiff was "limited" in all planes, when read together with the medical record and the non-

16   examining opinion of Dr. Gordon Hale, M.D., that plaintiff was "limited" *only* in overhead

17   reaching, Dr. Fitterer actually meant that plaintiff was limited to occasional overhead reaching

18   and frequent reaching in all other planes. Tr. 178; *compare* Tr. 121 (Dr. Hale) *with* Tr. 142 (Dr.

19   Fitterer). The ALJ also rejected uncontradicted medical opinions of examining psychologist Dr.

20   Jeremy Senske, Psy.D., non-examining psychologist Dr. Covell, and non-examining psychiatrist

21   Dr. Steven Haney, M.D., that plaintiff was limited to superficial contact because plaintiff's

22   history and the record as a whole did not demonstrate sufficiently severe mental limitations.

23   Tr. 173; *see* Tr. 107 (Dr. Covell), 144 (Dr. Haney), 717 (Dr. Senske). The Court finds that the

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 4

ALJ harmfully erred by discrediting without adequate support the medical opinions regarding limitations to occasional reaching and superficial contact.

### a.   Issue 3: Occasional Reaching

Plaintiff contends that the ALJ failed to cite substantial evidence for assessing plaintiff with an RFC of occasional, overhead reaching and frequent reaching in all other planes because all medical opinions except for Dr. Hale's recommended more reaching restrictions. The Court finds that the ALJ's evaluation of plaintiff's reaching restrictions was not supported by substantial evidence.

In January 2018, treating physician Dr. Neff opined that plaintiff was limited to occasional reaching based on an inability to do continuous activities involving his arms and shoulders due to, among other reasons, bilateral shoulder pain. Tr. 397–98. In March 2018, examining physician Dr. Leinenbach opined that plaintiff was limited to occasional bilateral reaching based on bilateral rotator cuff syndrome and bilateral shoulder degenerative joint disease. Tr. 712–13. In August 2018, examining physician Dr. McKown opined that plaintiff's reaching overall was "limited occasionally *as long as he does not have to reach above shoulders or head height*" based on degenerative arthritis of both shoulders resulting in limitations with a guarded prognosis for worsening because of the natural progress of the disease with age. Tr. 789–90 (emphasis added). Thus, all treating and examining physicians opined that plaintiff was limited to, at very least, occasional reaching in all planes, while Dr. McKown suggested that plaintiff should never reach overhead.

The ALJ chose to reject the treating and examining opinions in favor of opinions by reviewing, non-examining physicians whose less-restrictive limitations on reaching were unexplained. In April 2018, on initial consideration, reviewing, non-examining physician Dr.

Hale opined that plaintiff was limited to occasional *only* with respect to overhead reaching "due to bilateral rotator cuff tears and [degenerative joint disease]." Tr. 121. In doing so, however, Dr. Hale determined that the opinions by Dr. Neff and Dr. Leinenbach were "consistent with other objective evidence in file" and were given persuasive weight because "[s]igns findings and exams support the objective findings." Tr. 119–20. That is, Dr. Hale appeared to agree with the restrictions set forth by Drs. Neff and Leinenbach and gave no explanation for less severe reaching restrictions. *See* Tr. 119–22. On reconsideration in September 2018, reviewing, non-examining Dr. Fitterer opined that plaintiff was "limited" in reaching in front and/or laterally, as well as overhead. Tr. 142. Dr. Fitterer clarified that the limitation to occasional reaching was "due to bilateral rotator cuff tears and [degenerative joint disease]," but also appeared to note that plaintiff was limited to frequent reaching laterally. Tr. 142. Dr. Fitterer made no comment on what "limited" meant for reaching in front. Like Dr. Hale, Dr. Fitterer also credited the opinions of Drs. Neff and Leinenbach as consistent with the objective evidence as well as containing signs findings and exams that supported the objective findings. Tr. 140. Dr. Fitterer reviewed Dr. McKown's August 2018 opinion, noting only that Dr. McKown recommended sedentary work. *Id.* Like Dr. Hale, Dr. Fitterer did not otherwise explain how or why the evidence supported fewer reaching restrictions than those opined by Drs. Neff, Leinenbach, and McKown. Tr. 142.

The ALJ found the opinions of Drs. Hale and Fitterer to be persuasive while acknowledging that the opinions themselves did not explain why their opined reaching limitations differed from those of the treating and examining physicians. Tr. 178. Moreover, the ALJ did not adequately explain why taking the opinions of Drs. Hale and Fitterer together meant that Dr. Fitterer meant to limit plaintiff to occasional reaching overhead and frequent reaching forward *and* laterally when only lateral movement was specified, even though Dr. Hale appeared

to find *no* limitations to forward and lateral reaching, a conclusion shared neither by the ALJ nor by any other physician. Thus, to the extent the ALJ cited evidence in support of the assessed RFC of occasional overhead reaching and frequent reaching in all other planes—for example, normal upper extremity strength tests, 80% control of pain with medications, exams that showed a normal range of motion in the upper extremities—such post-facto speculation cannot resolve the internal inconsistency of Drs. Hale and Fitterer opining less severe reaching restrictions while apparently adopting the opinions of Drs. Neff and Leinenbach as consistent with the evidence. The ALJ's citation to such "normal" exam findings even appear to contradict her own observations regarding undisputed evidence about plaintiff's pain and shoulder limitations. For example, the ALJ noted that plaintiff reported worsening left shoulder pain in late-2017, imaging revealed degenerative changes and rotator cuff tear, and plaintiff underwent shoulder in January 2018; nevertheless, the ALJ noted that even *prior* to the operation, plaintiff had intact sensation and normal tone and muscle bulk. Tr. 175–76. That is, the ALJ acknowledged that such normal physical examination results existed even at a time period in which it is undisputed that plaintiff suffered from pain, obtained objective test results verifying shoulder damage, and underwent surgery to correct the damage. Yet suggesting that during this time period plaintiff could reach overhead occasionally and frequently in all planes would be counterfactual. Similarly, the ALJ observed that plaintiff "notably also had full shoulder range of motion and full strength in all extremities during a March 2018 exam [by Dr. Leinenbach], and later more limited range of motion at an August 2018 exam [by Dr. McKown] but with no intervening incident to explain the discrepancy." Tr. 177 (citations omitted). The ALJ did not acknowledge, however, that Dr. McKown did not cite plaintiff's limited range of motion as a reason for limiting plaintiff to occasional reaching and that no physician opined that a more limited range of motion based in-

1    part on *degenerative* joint disease suggested that plaintiff was exhibiting suspicious exam results.

2    The ALJ relied on the opinions of Drs. Hale and Fitterer in assessing plaintiff with limitations to

3    occasional overhead reaching and frequent reaching in all other planes, though the physicians

4    neither opined such restrictions nor discussed why their reaching restrictions differed from those

5    of Drs. Ness, Leinenbach, and McKown. The ALJ could not remedy this erroneous reliance on

6    unsupported medical opinions by citing to aspects of the medical record that could plausibly

7    support greater, lesser, or no reaching restrictions at all. Permitting the ALJ to cite such flexible

8    evidence to support medical conclusions nowhere opined by medical sources would mean that

9    the ALJ was no longer reconciling conflicting medical evidence but creating it.

10          The Commissioner argues that the ALJ's error in evaluating reaching restrictions is

11   harmless because one of the three jobs identified by the ALJ at step five, counter clerk

12   (photofinishing), requires only occasional reaching. The Court disagrees because, as plaintiff

13   notes, the vocational expert's ("VE's") testimony on this question was confusing. For counter

14   clerk, the VE identified counter clerk (photofinishing), DICOT 249.366-010—its duties

15   described as, among other activities, receiving film for processing, loading film into equipment

16   that automatically processes and prints photos, and selling film and flash cubes—which the VE

17   conceded is no longer as common of a job as it once was. Tr. 82. The VE stated that as

18   performed today, the counter clerk job involves performing customer service duties at a counter.

19   *Id.* When plaintiff's counsel cited a survey that indicated that the job of counter clerk would

20   involve more than occasional reaching due to doing more cashiering, the VE did not disagree,

21   noted that any job involving cashiering would be a composite job that would substantiate

22   increased activities, and stated, "In my opinion and experience, the occupation of counter clerk

23   does have upper extremity requirements for reaching, handling, and fingering that are going to be

higher than what the DOT calls for." Tr. 83. Moreover, as discussed below, the Court is also reversing based on the ALJ's rejection of the limitation to superficial contact with others, which would independently eliminate the job of counter clerk.

The Court finds the ALJ harmfully erred by failing to support the assessed RFC on reaching limitations with substantial evidence.

### b. Issue 4: Superficial Contact

Plaintiff contends that the ALJ erred by rejecting the opinions of both non-examining, reviewing DDS consultants Dr. Covell and Dr. Haney, who limited plaintiff to superficial contact with others. The Court finds that the ALJ did not support with substantial evidence her rejection of the limitation to superficial contact with others.

At step two of the sequential evaluation, the ALJ made a conclusory finding that Mr. Calvert was only mildly limited in the four functional areas used to evaluate mental impairments because there was insufficient evidence in the record as a whole—outside of the uncontradicted opinions of examining psychologist Dr. Senske, reviewing psychologist Dr. Covell, and reviewing psychiatrist Dr. Haney—to support a severe mental impairment. Tr. 172–73. Relevant here, the ALJ improperly rejected uncontradicted medical opinions about plaintiff's limitation to superficial contact with others because in his hearing testimony and in the medical record plaintiff did not appear impaired enough. For example, the ALJ opined that at the hearing plaintiff "was unable to describe symptoms or any way in which depression would interfere with work," and that although plaintiff was prescribed Zoloft to treat his depression, he had not required inpatient hospitalization or outpatient therapy and his physical examination reports often did not mention observed mental abnormalities. Tr. 173. In sum, the ALJ accepted her own evaluation of plaintiff's mental limitations over those of three medical professionals. That was

1    error because the ALJ is not permitted to substitute his or her own opinion for that of a medical

2    source. *See, e.g.*, *Adams v. Astrue*, 2008 WL 2345280 (W.D. Wash. 2008).

3            In April 2018, psychological examiner Dr. Senske diagnosed plaintiff with adjustment

4    disorder with depressed mood and opined that plaintiff was limited socially based on physical

5    functional limitations and chronic pain, as well as adjustment depression. Tr. 717. The ALJ

6    purported to find Dr. Senske's opinion "persuasive as far as the mental health arena in which is

7    opinion was sought," but then rejected "any significant mental health difficulties due to

8    depression" because, as is undisputed, both Dr. Senske and plaintiff propose that plaintiff's

9    mental limitations are intertwined with his physical limitations and pain. Tr. 173; *see* Tr. 57

10   (ALJ: "And are you claiming that depression would keep you from working?" / Plaintiff: "[I]t's

11   possible. I'm not sure, you know, unless I went to work."); Tr. 715 (Dr. Senske noting

12   "Depression and Anxiety seem to fluctuate on a day mainly due to increased pain and increased

13   physical functional limitations"). Although the ALJ and the Commissioner discredit the severity

14   of the diagnosed depression based on plaintiff's lack of treatment and lack of insight into his own

15   condition, the Ninth Circuit has noted: "[T]he fact that claimant may be one of millions of people

16   who did not seek treatment for a mental disorder until late in the day is not a substantial basis on

17   which to conclude that the [physician's] assessment of claimant's condition is inaccurate."

18   *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Although psychologist Dr. Covell and

19   psychiatrist Dr. Haney opined that plaintiff had milder mental limitations than those proposed by

20   Dr. Senske, they did not dismiss plaintiff's mental health condition out-of-hand in the manner the

21   ALJ did.  Drs. Covell and Haney opined that plaintiff would be limited at work by the capacity

22   for superficial contact with others. The ALJ rejected those opinions only by citing her own

23   evaluation of the testimony and general observations made during physical exams rather than by

adequately addressing the opinions of mental-health experts. Tr. 173. The ALJ's substitution of her own opinion for the medical opinions constituted harmful error because it led to an incomplete evaluation of plaintiff's mental limitations at step two, a failure to consider mental limitations in assessing RFC, and a lack of consideration of social limitations when evaluating jobs plaintiff could perform at step five.

The Court finds that the ALJ harmfully erred by failing to cite substantial evidence to reject the opinions of Drs. Covell and Haney that plaintiff was limited to superficial social interactions.

### 2. Other Issues: Issue 1 (Sedentary Work), Issue 2 (Standing/Walking), and Issue 5 (Absences from Work)

The ALJ rejected the opinion of treating physician Dr. Neff that plaintiff was limited to sedentary work; the opinions of examining physicians Drs. Leinenbach and McKown that plaintiff was limited to standing/walking no more than four to six hours in a workday; and the opinion of Dr. Neff that plaintiff would miss four or more days per month. The Court finds the ALJ's conclusions on Issues 1, 2, and 5 were supported by substantial evidence and free harmful error.

### a. Issue 1: Sedentary Work

The ALJ discounted treating physician Dr. Neff's opinion that plaintiff was limited to sedentary work, finding instead plaintiff was limited to light work with additional restrictions consistent with the opinions of examining physicians Drs. Leinenbach and McKown and reviewing physicians Drs. Hale and Fitterer, as well as with examinations showing normal gait, lower extremity range of motion, and normal strength throughout. Tr. 178–79; *see* Tr. 120 (Dr. Hale's opinion); Tr. 141 (Dr. Fitterer's opinion); Tr. 397–98 (Dr. Neff's opinion); Tr. 713 (Dr. Leinenbach's opinion), 790 (Dr. McKown's opinion); *see, e.g.*, Tr. 712, 788–89, 794, 799–800,

804, 827, 861, 984, 992 (examinations). The ALJ's citation to numerous medical sources suggesting plaintiff's capacity to perform light work constituted substantial evidence and was not the result of harmful legal error.

### b. Issue 2: Standing/Walking Limitations

The ALJ assessed plaintiff with an RFC to stand/walk for 6 hours in an 8-hour workday, which is the upper range of Dr. Leinenbach's opinion that plaintiff can stand/walk for 4 to 6 hours, and presumably inconsistent with Dr. McKown's limitation only to "at least" 4 hours. Tr. 174, 178; *see* Tr. 713 (Dr. Leinenbach's opinion); Tr. 790 (Dr. McKown's opinion). The ALJ gave greater weight to the opinions of Drs. Hale and Fitterer that plaintiff could stand/walk for 6 hours in an 8-hour workday, as well as crediting the longitudinal record of examinations showing improvement with physical therapy and surgery, pain relief with medication, normal gait, lower extremity range of motion, and normal strength throughout. Tr. 178; *see* Tr. 120 (Dr. Hale's opinion); Tr. 141 (Dr. Fitterer's opinion); *see, e.g.*, Tr. 712, 788–89, 794, 799–800, 804, 827, 861, 984, 992 (examinations, including by Drs. Leinenbach and McKown). The Court finds that the ALJ reasonably resolved conflicting medical opinions regarding plaintiff's standing/walking limitations. The Court finds that the ALJ supported discounting the standing/walking limitations opined by Drs. Leinenbach and McKown with substantial evidence and did not commit harmful legal error.

### c. Issue 3: Absences from Work

Dr. Neff opined plaintiff would miss four or more days of work per month because he is "unable to do continuous activities involving his arms and shoulders." Tr. 397. The ALJ rejected this conclusory statement as inconsistent with the opinions of Drs. Leinenbach, McKown, Hale, and Fitterer, as well as the longitudinal medical record. Tr. 179. The ALJ's citation to numerous

1  medical opinions that contradicted Dr. Neff's conclusory statement, as well as to the longitudinal

2  medical record, constituted substantial evidence and was not harmful, legal error.

3  **CONCLUSION**

4       For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is

5  **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

6       On remand, the ALJ should reevaluate on an open record plaintiff's severe impairments

7  at step two; develop the record as needed; reassess residual functional capacity with respect to

8  plaintiff's limitations on reaching and to superficial social interactions; hold a new hearing with

9  additional vocational expert testimony; proceed with the sequential analysis; and issue a new

10  decision.

11       DATED this 18th day of January, 2022.

12

13  _____

14  BRIAN A. TSUCHIDA
    United States Magistrate Judge

15

16

17

18

19

20

21

22

23

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 13